UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

E.B., et al.,

                    Plaintiffs,              CV-02-5118 (CPS)

        - against -                          MEMORANDUM
                                             OPINION AND ORDER
New York City Board of Education, et al.,

                    Defendants.

----------------------------------------X

SIFTON, Senior Judge.

    Plaintiffs are a class of disabled children who bring this
action against defendants, the New York City Board of Education,
the New York City Department of Education, and Joel Klein, the
Chancellor of the New York City School District, alleging
violations of 42 U.S.C. § 1983, the Fourteenth Amendment to the
United States Constitution, the Individuals with Disabilities
Education Act, 20 U.S.C. § 1400, *et seq*. ("IDEA"), Section 504 of
the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the
Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et
seq*.  Plaintiffs seek declaratory and injunctive relief based on
their allegedly illegal exclusion from public schools.
Plaintiffs claim that defendants have instituted and followed a
policy, practice, and custom pursuant to which plaintiffs and
other disabled students are, were, or will be illegally excluded
from school without notice of their right to a hearing, and that
during this period of exclusion they do not receive a free and

appropriate public education.

Presently before the Court is the defendants' motion pursuant to Federal Rule of Civil Procedure 23(c)(1)(C) to amend the Court's previous order in this case dated August 17, 2004, certifying and defining a plaintiff class, and the plaintiffs' motion to certify subclasses pursuant to Rule 23(c)(4).  For the reasons that follow, the motion to amend the class definition is granted in part, and the motion to certify subclasses is granted consistent with the amended class definition.

Background

The following facts are drawn from the Third Amended Complaint and the parties' submissions in connection with this motion and the previous motion for class certification.  Relevant disputes are noted.

Plaintiffs describe themselves as New York City children ranging in age from three to twenty-one who have been or will be at risk of being suspended, expelled, transferred, or otherwise excluded from New York City public schools.  The children allegedly suffer from various learning disabilities and emotional disorders.

Plaintiffs allege that defendants are engaged in a systematic practice of excluding children from school without following procedures mandated by federal law.  Specifically, plaintiffs allege that students frequently fail to receive notice or an adequate hearing prior to exclusion.  *See* 20 U.S.C. § 1415.

During this period of exclusion, Plaintiffs allege that they do not received a "free and appropriate public education" ("FAPE") as required by law.

The Named Plaintiffs

Plaintiffs describe themselves and their alleged exclusions as follows.

### Plaintiff EB

In the Spring of 2001, Plaintiff EB was classified as emotionally disturbed. In September 2002, he was suspended from school due to his behavior for more than ten days. EB's mother was never provided notice of her rights regarding EB's suspension and that EB did not receive any instructional services while he was suspended. When EB returned to school, he was placed in a self-contained class without instruction or services.

### Plaintiff LB 1

Plaintiff LB 1 is a seventeen-year-old disabled student living in New York City with an individual education plan ("IEP") that classifies him as learning disabled. In September 2002, he was allegedly discharged from school due to truancy. When he tried to re-register, he was referred to a General Educational Development ("GED") program. But when LB 1 sought to enroll in the GED program, he was informed that he did not have enough credits to enroll. He was not offered a hearing prior to this discharge, and as result has missed eight months of school.

### Plaintiff KSG

Plaintiff KSG is learning disabled and has Attention Deficit

Hyperactivity Disorder ("ADHD") and a Traumatic Brain Injury ("TBI"). In the year preceding the filing of the Complaint, KSG was repeatedly subjected to suspensions by school superintendents and transferred to suspension centers without appropriate educational services. The complaint alleges that KSG's parents were not notified by the Department of KSG's rights regarding transfers and suspensions. As a result, KSG has missed more than fifty days of appropriate instruction. At the time that the complaint was filed, KSG continued to be in an alternative center that was not providing appropriate educational services.

Plaintiff AJ

Plaintiff AJ is autistic. From September to November 2002, AJ was excluded from his classes because of his behavior, and his guardians were allegedly never informed of his rights regarding the exclusion.

In September 2002, AJ's attorneys filed an Impartial Hearing request on behalf of AJ and his guardian. Although the Independent Hearing Officer ordered that AJ be restored to his class with his IEP services, neither the District nor the school complied with that order. In October 2002, the Hearing Officer issued a second order directing AJ to be placed in his class, and defendants eventually reinstated AJ, although not before he had missed more than two months of instruction.

Plaintiff SM

Plaintiff SM has ADHD. Although he takes medication for his learning disability, he was decertified from special education in

1999 and was offered no services thereafter.  During his junior high school years, SM was expelled on multiple occasions.  After SM was assaulted at school, his father requested a safety transfer.  As a result, he was out of school for several weeks before a new school was provided.

### Plaintiff IP

Plaintiff IP received special education teacher support services for his learning disabilities.  In March 2003, after being accused of a suspendable offense, IP was referred to two alternative placements, neither of which provided instruction.  As of April 2003, IP had not received a decision or disposition regarding his suspension.  At some point, either IP or his mother was verbally informed that IP had been transferred to another school.

### Plaintiff JW

Plaintiff JW alleges that he has ADHD and a Section 504 plan to receive medication while in school.  In February 2002, JW was removed from his regular class due to behavioral problems and was placed in a dean's intervention room at his school for approximately one month.  JW received no direct instruction while assigned to the dean's intervention room and was segregated from his peers.  During this time, JW alleges that his parents never received notice of the suspension or removal, or of a hearing, conference determination review.  After JW's attorneys contacted his principal, JW was taken out of suspension, but was not permitted to return to his regular class.  Instead, he was sent

to a class of lower functioning students.

In March 2002, JW's attorneys filed a request for an Impartial Hearing.  JW missed a month of school before the hearing was held.  On May 3, 2002, a decision was issued in JW's favor, and the district was ordered to transfer JW to another school with an appropriate class.  However, despite the order, defendants did not transfer JW until September 2002, and JW suffered from three months of inappropriate instruction as a result.

Procedural Background

On August 17, 2004, I issued a memorandum and order granting the plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23.  The plaintiffs had moved to certify a class of "disabled New York City children age three through twenty-one who have been, will be, or are at risk of being excluded from school and deprived of educational services through suspensions, expulsions, transfers, discharges, removals and denials of access conducted in violation of law."  The common issues of law justifying certification were asserted to be that the members of the class failed to receive notice prior to their exclusion and, while excluded, were denied a free and appropriate education as required by the IDEA.

I held that plaintiffs' proposed definition included individuals who did not share plaintiffs' proposed elements of commonality and typicality.  The plaintiffs' definition would have encompassed students excluded for any reason, pursuant to

any policy, that violated any law.  I narrowed the plaintiffs'
proposed definition to include only students who had been
excluded from school through procedures that did not provide
adequate notice.  The class certified was defined as: "disabled
New York City children age three through twenty-one who have
been, will be, or are at risk of being excluded from school
without adequate notice and deprived of a free and appropriate
education through suspensions, expulsions, transfers, discharges,
removals and denials of access."

I also ruled that subclasses were warranted to facilitate
discovery, narrow and identify issues to be tried, and provide
adequate notice to the defendants of the claims they faced.
However, I declined to craft subclasses because neither party had
briefed the issue.  Accordingly, in a subsequent memorandum and
order, I directed the plaintiffs to file a motion to certify
subclasses and identify for each proposed subclass: 1) a subclass
definition; 2) a discrete practice that is being challenged; 3)
the law that this practice is said to violate; 4) the named class
members that are aggrieved by this discrete practice; and 5) the
subclasses that each named plaintiff represents.

Plaintiffs now move to certify subclasses in accordance with
that order.  The defendants have moved to amend the class
definition to include only: "disabled New York City children age
three through twenty-one who have been, will be, or are at risk
of being excluded from school without adequate notice and
deprived of a free and appropriate education for disciplinary

reasons through teacher removals, suspensions and expulsions."[1]

## Discussion

## Motion for Modification of Class Definition

Rule 23(c)(1)(C) provides, "An order [certifying a class] may be altered or amended before judgment." *See also Morelock Enter., Inc. v. Weyerhauser Co.*, 04-583, 2004 WL 2997526, at *3 (D. Or. Dec. 16, 2004).  Such amendment is frequently appropriate as a case develops and the allegations and evidence becomes clear to ensure that the typicality and commonality requirements of Rule 23(a) are met.  *See Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999).

Defendants contend that amending the class definition as described "will more accurately reflect the class claims identified by this Court, will clearly identify the issues to be tried in this action, will focus discovery, and will avoid the difficulty inherent in lumping every type of illegality that could lead to exclusion together in a single case." (Defendants' Memo. 10.)  Defendants' proposed definition in effect embodies two changes to the class definition.  First, it limits the class to those excluded for disciplinary reasons.  Second, it limits the method of exclusion to "teacher removals, suspensions, and expulsions."  Defendants thereby seek to exclude from the class

---

[1] At oral argument, the defendants stated without contradiction by plaintiffs that a "teacher removal" was a Department of Education term for the power of a teacher to exclude a student from his classroom for one to five days.

plaintiffs who were transferred to alternative school settings for disciplinary reasons.

The Court adopts the defendants' first proposed modification on the assumption that the phrase "disciplinary reasons" refers to any removal, suspension, expulsion, transfer, discharge, or denial of access motivated wholly or in part by behavior disruptive of order or discipline within the school. *Cf*. N.Y. EDUC. LAW § 3214. The plaintiffs' papers submitted in connection with the present motion and the complaint make clear that each of the named plaintiffs are alleged to have been excluded for disciplinary reasons so defined. Plaintiffs contend that the altered class definition would not include the claims of LB 1, SM, KSG, EB, AJ, and JW, yet plaintiffs submissions belie this claim. Plaintiffs allege that EB and SM were subjected to a "building level disciplinary proceeding," LB 1 and AJ were subjected to an "informal behavioral exclusion," KSG was subjected to a "superintendent suspension," and that JW was removed from his classroom "due to behavior." An examination of these named plaintiffs' claims reveals that they are uniformly challenging the defendants' practices with respect to disciplinary exclusions of disabled children from the classroom.

Classes are to be defined in terms of common issues. 1 NEWBERG ON CLASS ACTIONS § 3:19. For a class action to be proper, the class representative's claims must be typical of the claims of the persons encompassed by the class definition. 1 NEWBERG ON CLASS ACTIONS § 2:7. Defined broadly enough, any named plaintiff's

claim will coincide with those of a particular class. But precision is required to ensure that the named plaintiff is the proper party to raise particular issues common to the class. It is likely, for example, that the practices the defendants use to exclude students due to behavioral problems are distinct from those used to transfer students for academic, financial, or logistical reasons. Similarly, disabled students who are excluded pursuant to disciplinary practices may seek relief of a different quality than that which a disabled student who is excluded for other reasons would request. A narrower class definition is needed to ensure that the named plaintiffs' claims are "typical" of the class, thereby ensuring adequate representation. *See* FED. R. CIV. PRO. 23(a); 1 NEWBERG ON CLASS ACTIONS § 2:7 ("Typicality of claims helps protect the interests of absent class members because the plaintiff with a typical claim advances the interests of the class by pursuing his or her own self-interest."); *id.* at § 3:31 ("If [class members'] interests cannot be protected, the class action should be limited to exclude them from the class definition.").

I decline, however, to eliminate from the class definition those plaintiffs who were excluded by means other than "teacher removals, suspensions, and expulsions." Defendants argue that students transferred from one school building to another are not "excluded" from school, and that including "transfers" within the meaning of "exclusion" threatens to expand the scope of the class to reassignments that have no impact on educational placement.

The relevant portion of the IDEA states that notice be provided whenever a school "proposes to initiate or change . . . the . . . educational placement of the child." 20 U.S.C. § 1415(b)(3). Plaintiffs allege that this statutory language encompasses transfer to educational facilities intended for students with disciplinary problems. Although the Court has narrowed the class definition to include only disciplinary exclusions, plaintiffs allege that transferring students to schools with the resources to handle difficult children is a common disciplinary practice. Such disciplinary transfers which result in a change of educational placement are, therefore, properly within the scope of the class.

The class definition is amended to "Disabled New York City children age three through twenty-one who have been, will be, or are at risk of being excluded from school for disciplinary reasons without adequate notice and deprived of a free and appropriate education through suspensions, expulsions, transfers, discharges, removals, denials of access or other changes of educational placement." The plaintiffs' proposed subclasses will be modified accordingly.


Motion to Certify Subclasses

Rule 23(c)(4) permits a court to certify subclasses with respect to particular issues. This enables a court to "treat common things in common and distinguish the distinguishable." *Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (5th Cir. 1968).

Under Rule 23, a court must define, redefine, subclass, and decertify as appropriate in response to the progression of a case. *See Boucher*, 164 F.3d at 118. Each subclass must independently satisfy the requirements of Rule 23, including commonality, typicality and numerosity. *See Marisol A. v. Giuliani*, 95 Civ. 10533, 1998 WL 199927 (S.D.N.Y. April 23, 1998).

Plaintiffs have proposed the following six subclasses, which distinguish class members according to the means by which they were excluded from school:

1) "Superintendents Suspensions and Expulsions Subclass," defined as "class members who have been, will be, or are at risk of being excluded from school without adequate notice and denied free appropriate education as a result of a superintendents' suspension or expulsion." Plaintiffs propose that named plaintiffs "KSG" and "IP" will represent this subclass.

2) "Building-Level Disciplinary Proceedings Subclass," defined as "class members who have been, will be, or are at risk of being excluded from school without adequate notice and denied free appropriate education as a result of a disciplinary measure imposed by a staff member at school." The plaintiffs define "disciplinary measure" as "suspension, expulsion, teacher removal, or referral to a school or annex for being disruptive or truant under New York Education Law § 3214." Plaintiffs identify KSG, IP, SM, and EB as named representatives.

3) "Informal Behavioral Exclusion Subclass," defined as "class members who have been, will be, or are at risk of being excluded from school without adequate notice and denied free appropriate education as a result of an informal exclusion based on their behavior." Plaintiffs define "informal exclusion" as occurring when "a child has been de facto removed, transferred, discharged, denied access to, suspended, expelled or moved out of the class or school he or she attended without Defendants trying to utilize a formal 'suspension, expulsion, teacher removal, transfer or

discharge, process.' "  Plaintiffs identify EB, LB 1,
AJ, and SM as named representatives.

4) "Transfer and Discharge Subclass," defined as "class
members how have been, will be, or are at risk of being
excluded from school without adequate notice and denied
free appropriate education as a result of a transfer or
discharge."  Plaintiffs define "transfer or discharge"
as "situations in which a child is moved from one
school building to another."  Plaintiffs identify LB 1,
SM, EB, and KSG as named representatives.

5) "Class Members Without IEPs Subclass," defined as
"disabled New York City children age three through
twenty-one, who do not have active IEPs, who have been,
will be, or are at risk of being excluded from school
without adequate notice and denied free appropriate
education due to suspensions, expulsions, transfers,
discharges, removals, and denials of access."
Plaintiffs identify KSG and SM as named
representatives.

6) "Section 504 Subclass," defined as "disabled New
York City children age three through twenty-one,
without active IEPs, who have a disability within the
meaning of Section 504 of the Rehabilitation Act, who
have been, will be, or are at risk of being excluded
from school without adequate notice and denied free
appropriate education due to suspensions, expulsions,
transfers, discharges, removals, and denials of
access."  Plaintiffs identify SM and JW as named
representatives.


In accordance with my decision to narrow the class

definition, subclass five will be redefined as "Disabled New York

City children age three through twenty-one, who do not have

active IEPs, who have been, will be, or are at risk of being

excluded from school for disciplinary reasons without adequate

notice and denied free appropriate education for disciplinary

reasons through suspensions, expulsions, transfers, discharges,

removals, denials of access, or other changes of educational

placement."  Similarly, the definition of subclass six is altered

to: "New York City children age three through twenty-one, without active IEPs, who have a disability within the meaning of Section 504 of the Rehabilitation Act, who have been, will be, or are at risk of being excluded from school for disciplinary reasons without adequate notice and denied a free and appropriate education through suspensions, expulsions, transfers, discharges, removals, denials of access, and other changes of educational placement."

Rule 23 Requirements

Rule 23 imposes two sets of limits on class certification. First, Rule 23(a) requires: 1) numerosity; 2) commonality; 3) typicality; and 4) adequacy of representation. *See* FED. R. CIV. PRO. 23(a). Second, the class must be maintainable under one of the provisions of Rule 23(b). Defendants do not dispute that each of these subclasses satisfies the requirements of numerosity, typicality, commonality, that the named plaintiffs will adequately represent the subclass, and that each subclass is properly maintainable pursuant to Rule 23(b)(2).[2] Despite defendants acquiescence in certifying subclasses, the Court has an independent obligation to ensure that the requirements for class certification are met. *Valley Drug Co. v. Geneva Pharm.,*

---

[2] Rule 23(b)(2) provides that a class action may be maintainable if the requirements of commonality, typicality, numerosity, and adequacy of representation are satisfied, and:

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

*Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003); *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003); *Masters v. Wilhelmina Model Agency*, 02 Civ. 4911, 2003 WL 21089073 at *3 (S.D.N.Y. May 13, 2003). As explained below, at this time, I conclude that these requirements are satisfied. This decision may be reconsidered as the case develops.

<u>Numerosity</u>

Class certification is only appropriate when the number of plaintiffs is sufficiently large as to render joinder impracticable. FED. R. CIV. PRO. 23(a)(1). This requires an evaluation of all the circumstances surrounding the case, including judicial economy, the ability of claimants to institute individual suits, and requests for injunctive relief that would involve future class members. Plaintiffs need not present evidence of an exact class size, but instead merely some evidence of a reasonable estimate that the proposed class is sufficiently large. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Mere speculation concerning the number of class members will not suffice. *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005). A plaintiff's statement made "on information and belief" that the class is sufficiently large will not suffice. *Weiss v. Fein, Such, Kahn & Shepard, P.C.*, 01 Civ. 1086, 2002 WL 449653 (S.D.N.Y. Mar. 22, 2002).

I find that numerosity has been established for each of these subclasses. Plaintiffs submit Board of Education documentation demonstrating that subclass one –– the

"superintendent suspension and expulsion" subclass -- numbers in the hundreds, if not thousands. (*See* Hyman Decl. Ex. 32.) Plaintiffs state that there at least ten thousand suspensions of students with IEPs each year.

Subclass two -- the "Building-Level Disciplinary Proceedings Subclass" -- is likely to be similarly numerous. Plaintiffs submit Department of Education documentation demonstrating that hundreds of students with disabilities are subjected to in-school suspensions each year.

There is little statistical information concerning the size of subclass three -- "Informal Behavioral Exclusion Subclass." The informal nature of these removals apparently makes them unlikely to be documented. Nevertheless, plaintiffs have identified fifteen individual students who have been subjected to some manner of informal exclusion. Given the size of the New York City school system, it is reasonable to conclude at this point that this subclass is sufficiently numerous to comply with the requirements of Rule 23(a).

Plaintiffs identify thirteen known students who potentially fall within the definition of subclass four -- the "Transfer and Discharge Subclass." In addition, plaintiffs submit evidence that hundreds of New York students with disabilities are currently in GED preparation programs. Subclass four has therefore met the numerosity requirement.

Subclass five -- "Class Members Without IEPs Subclass" -- encompasses disabled students who have not been identified as

such and provided with an appropriate IEP.  Plaintiffs submit
evidence that 11% of New York City's one million students are
classified by defendants as having a disability, while school
districts in other large New York cities classify approximately
15% of their students as disabled.  The difference between these
two statistics suggests that there may be thousands of disabled
New York City school students who have not been identified as
disabled and provided with an IEP.

Subclass six -- the "Section 504 Subclass" -- similarly
consists of students who are disabled within the meaning of
Section 504 of the Rehabilitation Act but have not been so
identified.  According to the defendants' records, over ten
thousand New York City public school students are currently
identified as disabled within the meaning of the Rehabilitation
Act.  Plaintiffs also submit statistics demonstrating that the
number of such students varies substantially between school
districts.  Some districts have as few as one identified student,
while others have over one thousand.  This discrepancy permits a
reasonable inference that a sufficient number of students who are
disabled within the meaning of the Rehabilitation Act have not
been properly identified.

### Commonality

The commonality requirement of Rule 23 requires the
plaintiffs' claims to share a common legal or factual element.
*Marisol A.*, 126 F.3d at 376.  Individual circumstances may
differ, so long as "common questions are at the core of the cause

of action alleged." *Vengurlekar v. Silverline Tech., Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y. 2003). Class actions seeking injunctive or declaratory relief, by their nature, frequently raise common questions. *See Cortigiano v. Oceanview Manor Home for Adults,* 227 F.R.D. 194, 205 (E.D.N.Y. 2005).

Each subclass meets the commonality requirement. The common question of law and fact that subclasses one through four share is whether the defendants policies with respect to each type of behavioral removal or exclusion from school provides the appropriate procedural protections required by law. Members of subclass five -- pertaining to class members without IEPs -- share the common legal and factual question of whether the defendants' policies for identifying disabled students are in accord with the requirements of the IDEA. With respect to subclass six, the class members share the common question of whether the defendants' policies for identifying disabled students comply with Section 504 of the Rehabilitation Act.

### Typicality

Typicality requires that the claims of the class representatives be typical of the class. *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). The requirement is satisfied where each class member makes similar legal arguments and each claim arises from the same course of events. *Id.* Typicality does not require that the factual predicate for each claim be identical. *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999). Instead, a

"disputed issue of law or fact must occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Id.* The question is essentially how closely the common question relates to the named plaintiff's cause of action. *Jones v. Ford Motor Credit Co.*, 00 Civ. 8330, 2005 WL 743213, at *11 (S.D.N.Y. March 31, 2005).

Crafting subclasses in this case serves to increase typicality by grouping plaintiffs according to the particular procedural method, or lack of formal procedural measure, by which their educational placement was changed. That the common issue of fact or law that the claims of the members of each subclass share are not peripheral to those raised by the named plaintiffs indicates typicality. Although the factual circumstances surrounding each plaintiff's exclusion may differ, each plaintiff's claim turns on what procedural requirements the IDEA, the Rehabilitation Act, the Constitution, and state law impose prior to implementing the relevant form of exclusion from the classroom. Moreover, the plaintiffs do not seek monetary damages, but instead injunctive relief to reform a continuing policy. *Cf. Dajour B. ex rel. L.S. v. City of New York*, 00 Civ. 2044, 2001 WL 1173504, at *7 (S.D.N.Y. Oct. 3, 2001). The plaintiffs have identified class representatives for each subclass, the defendants do not challenge those classifications, and the Court sees no reason why their claims are not typical of the subclass that each represents.

Adequacy of Representation

Rule 23(a) requires plaintiffs to demonstrate that "the representative parties will fairly and adequately protect the interests of the class."  The adequacy of representation is a two-pronged inquiry.  First, class counsel must be qualified, experienced, and able.  *Vega v. Credit Bureau Enter.*, 02 CV 1550, 2005 WL 711657 (E.D.N.Y. May 29, 2005).  Second, the class members must not have antagonistic interests.  *Id.*  The Court previously determined and the defendants do not dispute that plaintiffs' counsel was qualified.  Nor do the defendants claim or any information on record suggest that any subclass members have antagonistic interests, and the Court can identify no conflict at this time.  Accordingly, adequacy of representation is satisfied.

Rule 23(b)(2)

A class action is maintainable pursuant to Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  This provision is intended for cases, such as this one, where plaintiffs seek broad, class-wide injunctive relief.[3]  *See Robinson*, 267 F.3d at 162.  As noted in the Court's previous opinion certifying a

---

[3] The complaint also seeks the creation "of a fund that can be accessed by class members to pay for educational services to make up for loss of educational services for class members who have experienced significant exclusions."  (Complaint ¶ 191(i).)

plaintiff class, the value of the injunctive relief in this case
predominates over any individual claims for compensation, and
certification pursuant to Rule 23(b)(2) is appropriate.

<u>Conclusion</u>

For the foregoing reasons, the motion to amend the class
definition is granted in part, and the motion to certify
subclasses is granted consistent with the amended class
definition.

The Clerk is directed to furnish a filed copy of the within
to all parties and to the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York

June 29, 2005

<u>/s/Charles P. Sifton (electronically signed)</u>
United States District Judge