UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

E.B., et al.,

                    Plaintiffs,              ORDER

          - against -                       CV 2002-5118 (CPS)(MDG)

NEW YORK CITY BOARD OF EDUCATION,
et al.,

                    Defendants.

- - - - - - - - - - - - - - - - - -X


        Plaintiffs are a class of disabled children who bring this

action against defendants the New York City Board of Education,

the New York City Department of Education ("DOE"), and Joel Klein,

the Chancellor of the New York City School District, alleging

violations of 42 U.S.C. § 1983, the Fourteenth Amendment to the

United States Constitution, the Individuals with Disabilities

Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"), Section 504 of

the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12132, et seq.

Plaintiffs claim that under defendants' policies governing

suspensions, plaintiffs and other disabled students are illegally

excluded from school without notice of their right to a hearing

and do not receive a free and appropriate public education.

        Plaintiffs move to compel defendants to produce documents

withheld under a claim that they are protected from disclosure by

the attorney-client privilege and the attorney work-product doctrine or to submit the withheld documents for in camera review.

## **FACTUAL BACKGROUND**

The documents in dispute concern two types of documents that the DOE claims were created in the course of consultation with counsel.

Questionnaires and Responses

In or about February 2006, attorneys in DOE's Office of Legal Services ("OLS") decided to obtain information concerning the operation of DOE's suspension sites in order to evaluate DOE's legal position in this action and to provide legal advice to the Chancellor and Michele Cahill, Senior Counselor of the Office of Youth Development and School-Community Services. See Declaration of Theresa Crotty dated March 15, 2007 ("Crotty Decl.") (ct. doc. 158) at ¶ 4. To obtain the information, OLS attorneys, in conjunction with attorneys at the Office of the Corporation Counsel, developed a questionnaire to be completed by DOE's Regional Directors of Student Placement, Youth and Family Support Services ("SPYFSS"). Id. at ¶ 5. On February 28, 2006, DOE General Counsel Michael Best sent a memorandum to the Regional Directors of SPYFSS advising that it was circulating the questionairre as part of DOE's defense in this litigation, that recipients were to treat the questionnaire as confidential and that any questions should be directed to Theresa Crotty, an OLS

attorney. Id. at ¶¶ 6, 8-10. Ms. Crotty subsequently received a number of e-mails and letters from DOE employees transmitting completed questionnaires, containing questions from suspension sites to Regional personnel concerning the questionnaire, and reflecting a conversation between Ms. Crotty and a DOE employee about the questionnaire. See id. at ¶ 12; Declaration of Shawn V. Morehead dated March 5, 2007 ("Morehead Decl.") (ct. doc. 156-3), Exh. B (Letter to Shawn Morehead and Sharon Katz from Jane R. Goldberg dated February 6, 2007).[1] The OLS used the completed questionnaires "to inform [its] view of the DOE's legal position in this case and to provide legal advice to the Chancellor and Senior Counselor Michelle [sic] Cahill concerning the Superintendent suspension process." Crotty Decl. at ¶ 13.

Shane Mulhern, Executive Director of the DOE's Office of Youth Development and School-Community Services ("OYDSCS"), was later provided with a copy of the completed questionnaires at his request. See Declaration of Shane Santo Mulhern dated March 15, 2007 ("Mulhern Decl.") (ct. doc. 157) at ¶¶ 15-16. Mr. Mulhern believed that the information compiled by OLS would inform his department's decisions concerning policy, budget and planning decisions for Superintendent suspensions. Id. at ¶ 16. OYDSCS organized the information contained in the completed questionnaires into a document entitled "Suspension Scoring Sheet"

---

[1] Those e-mails that were not sent directly to Ms. Crotty were forwarded to her. See Morehead Decl., Exh. B at 4 n.1.

and a bar chart.  Id. at ¶¶ 17-19.  A single set of these documents and a set of the completed questionnaires were maintained at OYDSCS's offices.  Id. at ¶ 21.

At a conference held on March 29, 2007, I ordered defendants to submit a sample of the completed questionnaires for in camera review.  See minute entry for conference held on 3/29/07.

Tracking Suggestions

Mr. Mulhern initiated the Superintendent Suspension Process Improvement Project (the "Project") to review the suspension process generally and "to develop a data tracking program to monitor student progress through the suspension process."  Mulhern Decl. at ¶¶ 4-5.  In conjunction with the Project, a document entitled "Corporation Counsel - Suggestions for additional items to track" ("Tracking Suggestions") was prepared by Jocelyn Gibian, Director of the Office of Process Improvement, that discusses the New York City Law Department's recommendations "concerning additional items to consider including in the DOE's data tracking project" and a February 16, 2006 meeting between Ms. Crotty, Ms. Gibian and Aimee Dorosin, from DOE's Office of Special Education Initiatives.  Id. at ¶ 9.  This document was maintained in a dedicated folder on the DOE computer system and was accessible only to participants of the Project, who were drawn from various DOE departments.  Id. at ¶¶ 6-8.

Legal Standards

"A party invoking the attorney-client privilege must show
(1) a communication between client and counsel that (2) was
intended to be and was in fact kept confidential, and (3) was made
for the purpose of obtaining or providing legal advice."  In re
County of Erie, 473 F.3d 413, 419 (2d Cir. 2007); United States v.
Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996);
see Fisher v. United States, 425 U.S. 391, 403 (1976).  To be
sure, the "privilege protects confidential communications between
government counsel and their clients that are made for the purpose
of obtaining or providing legal assistance."[2]  In re County of
Erie, 473 F.3d at 418.  In order to merit protection, the
"predominant purpose" of the communication must be to render or
solicit legal advice as opposed to business or policy advice.  See
id. at 420.  The burden of establishing the applicability of the
privilege and all of its elements rests with the party claiming
protection.  See In re Grand Jury Proceedings, 219 F.3d 175, 182
(2d Cir. 2000); Constr. Prods., 73 F.3d at 473-74.

Federal Rule of Civil Procedure 26(b)(3) embodies the federal
work-product doctrine which provides qualified protection to
"documents and tangible things . . . prepared in anticipation of

---

[2] In civil suits between private litigants and government
agencies, the government's claim of the attorney-client privilege
is as strong as that of an individual or a corporate entity.  See
In re Erie, 473 F.3d at 419.

litigation or for trial" from discovery.  Fed. R. Civ. P.
26(b)(3); see Hickman v. Taylor, 329 U.S. 495, 511 (1947); Constr.
Prods., 73 F.3d at 473.  Documents prepared in anticipation of
litigation are those that, "in light of the nature of the document
and the factual situation in the particular case . . . can fairly
be said to have been prepared or obtained because of the prospect
of litigation."  United States v. Adlman, 134 F.3d 1194, 1202 (2d
Cir. 1998).  Thus, documents prepared in the ordinary course of
business or that "would have been created in essentially similar
form irrespective of the litigation" are not protected by the
work-product doctrine.  Id.  The party asserting work-product
protection bears the burden of establishing its applicability.
See Constr. Prods., 73 F.3d at 473.  If a party seeks disclosure
of protected documents, the party must demonstrate a "substantial
need of the materials in the preparation of the party's case and
that the party is unable without undue hardship to obtain the
substantial equivalent of the materials by other means."  Fed. R.
Civ. P. 26(b)(3).

Questionnaires and Responses

        I find that defendants have met their burden of demonstrating
that the attorney-client privilege applies to the questionnaire,
responses and related correspondence.  The questionnaire was
created by OLS attorneys, with input from attorneys at the Office
of the Corporation Counsel, for the predominant purpose of
evaluating DOE's legal position in this case and providing legal

advice to the Chancellor and Ms. Cahill. <u>See</u> Crotty Decl. at

¶¶ 4-5. The recipients of the questionnaire were advised that it

was being circulated as part of DOE's defense of this action and

cautioned to keep the information confidential. <u>Id.</u> at ¶¶ 6-10.

Under the circumstances, the responses of DOE's employees to the

questionnaire and the related correspondence were created for the

purpose of enabling DOE's attorneys to provide the agency with

legal advice. <u>See</u> <u>Upjohn v. United States</u>, 449 U.S. 383, 388-90,

394-95 (1981) (communications made by corporate employees to

counsel, including written questionnaires, were protected by

attorney-client privilege); <u>Carter v. Cornell Univ.</u>, 159 F.3d 1345

(Table), 1998 WL 537842, at *2 (2d Cir. July 9, 1998); <u>Lugosch v.</u>

<u>Conegel</u>, No. Civ. 00-CV-0784, 2006 WL 931687, at *16 (N.D.N.Y.

Mar. 7, 2006).

That the documents were later used by the OYDSCS to make

policy, budget and planning decisions concerning superintendent

suspensions does not undermine defendants' assertion that the

documents were initially created for the predominant purpose of

obtaining or providing legal advice. <u>See</u> <u>In re Erie</u>, 473 F.3d at

422-23 (in holding that e-mails were sent for the predominant

purpose of soliciting or rendering legal advice, the Second

Circuit looked to the context in which the communications

involving government counsel were solicited). However, the

subsequent disclosure of the questionnaire and responses to the

OYDSCS may constitute a waiver of the privilege, as the plaintiff

contends.  Id. at 423.  "The party claiming the privilege has the burden of showing 'that the communications between client and attorney were made in confidence and have been maintained in confidence.'"  Denney v. Jenkens & Gilchrist, 362 F. Supp. 2d 407, 412 (S.D.N.Y. 2004) (quoting In re Horowitz, 482 F.2d 72, 81-84 (2d Cir. 1973)).  As the Second Circuit recognized, "[t]he general rules governing waiver are more complicated when the issue arises in the context of corporate entities."  Doe, 219 F.3d at 183. Thus, "[a]lthough dissemination of privileged information to third parties generally waives attorney-client privilege, the distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege."  Strougo v. BEA Associates, 199 F.R.D. 515, 519-20 (S.D.N.Y. 2001) (citing Upjohn 449 U.S. at 391-92).

Courts determining whether dissemination of a document to employees amounts to waiver of an entity's attorney-client privilege apply "a 'need to know' standard: did the recipient need to know the content of the communication in order to perform her job effectively or to make informed decisions concerning, or affected by, the subject matter of the communication?"  Scholtisek v. Eldre Corp., 441 F. Supp. 2d 459, 464 (W.D.N.Y. 2006). Critical in such an evaluation is "the nature of the communication, that is, whether it necessarily incorporates legal advice."  Scholtisek, 441 F. Supp. 2d at 464; Verschoth v. Time Warner Inc., No. 00CIV1339, 2001 WL 286763, at *2 (S.D.N.Y. Mar.

22, 2001). Here, the questionnaire and responses did not contain legal advice. As Mr. Mulhern explains, he sought to obtain the factual information contained in the responses to aid in making policy, budget and planning decisions. <u>See</u> Mulhern Decl. at ¶ 16. Although defendants may be correct that OYDSCS "had a 'need to know' the content of those documents in order to effectively perform its duties and to make informed decisions about suspension sites," <u>see</u> Mem. in Opp. (ct. doc. 159) at 7, defendants do not claim that the reason OYDSCS obtained the questionnaire and responses was to secure or act on legal advice. <u>See</u> <u>In re Horowitz</u>, 482 F.2d at 81 (finding waiver of privilege because attorney-client communications were later sent to accountant "for purposes unrelated to the seeking of legal advice"); Restatement (Third) of Law Governing Lawyers § 73 cmt. g (2000) ("An organization may not immunize documents and other communications . . . circulated for a business or other nonlegal purpose"); 3 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal Evidence</u> § 503.22[4][a] (Joseph M. McLaughlin ed., 2006) (communications distributed to employees are confidential, "provided that those persons, because of the structure of the corporation, must know of the communication in order to insure that full and accurate information is provided to the attorney").

Defendants argue that the information distributed to Mr. Mulhern remains protected from disclosure because Mr. Mulhern's involvement in this litigation, including settlement discussions

with plaintiffs' counsel, brings him within the ambit of the attorney-client privilege.  However, defendants' argument is based on the unsupported assumption that a government employee who is a "client" for purposes of determining the scope of the attorney-client privilege under one set of circumstances, remains the client in all other contexts.  Such a position ignores the fact that "the relationship between a government attorney and a government official or employee is not the same as that between a private attorney and his client."  <u>In re Grand Jury Investigaton</u>, 399 F.3d F.3d 527, 534 (2d Cir. 2005).  Just as a government attorney may be consulted by other employees "in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend . . .," Mulhern, as the employee, may sometimes consult counsel or obtain information from counsel, which would not constitute legal advice.  <u>In re County of Erie</u>, 473 F.3d at 421.  In any event, since "entities can act only through agents, . . . any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee."  <u>United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO,</u> 119 F.3d 210, 215 (2d Cir. 1997) (citations omitted).  Focusing on the status of an employee vis à vis counsel at a discrete point in time in determining whether there is waiver of the attorney-client privilege with respect to documents created and disseminated at

other times and for other purposes makes little sense.

Defendants' argument highlights the fact that the "predominant purpose" test and the "need to know" standard both utilize a functional approach in determining whether a communication is or remains privileged.  Thus, whether there is waiver "should [also] be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer."  In re County of Erie, 473 F.3d at 420-21.  As discussed above, the dissemination of the survey information to OYDSCS had nothing to do with the seeking or rendering of legal advice and everything to do with enabling that office to make more effective decisions, as defendants admit.  While Mr. Mulhern's communications with DOE's attorneys may be privileged under other circumstances, in this context, the dissemination of purely factual material to the OYDSCS was not privileged.

Since the documents do not actually contain any legal advice and OYDSCS obtained them for a non-legal purpose, the "need to know" doctrine is inapplicable here.  See Scholtisek, 441 F. Supp. 2d at 464; Verschoth, 2001 WL 286763, at *2; cf. In re Horowitz, 482 F.2d at 81.  Forwarding copies of the questionnaire and responses to the OYDSCS was incompatible with the confidential nature of a communication to an attorney and amounts to waiver of the privilege.  See United States v. Stewart, 287 F. Supp. 2d 461,

-11-

464 (S.D.N.Y. 2003) (holding that defendant waived attorney-client privilege protecting e-mail to attorney by forwarding a copy of e-mail to her daughter).

Nevertheless, the documents may be withheld from production since defendants have met their burden of demonstrating that they are protected as attorney work-product. Defense counsel drafted the questionnaire and requested the defendants' responses because of this litigation, and the related correspondence concerned the creation of those documents. See United States v. Adlman, 134 F.3d at 1198 (work-product doctrine protects documents that were prepared because of existing litigation). That the completed questionnaires were later used for a purpose other than litigation does not mean that they are not protected by the work-product doctrine. See Adlman, 134 F.3d at 1202.

Plaintiffs argue that the responses are not entitled to work-product protection because they were written by non-lawyers and contained mere facts. See Reply Mem. at 11 n.7 (ct. doc. 160). However, the work-product doctrine applies not only to documents created by an attorney but also to documents prepared by the client. See Lugosch v. Conegel, No. Civ. 00-CV-0784, 2006 WL 931687, at *16 (N.D.N.Y. Mar. 7, 2006); Tilberg v. Next Mgmt Co., No. 04CIV7373, 2005 WL 3543701, at *1 (S.D.N.Y. Dec. 28, 2005); Bank of New York v. Meridien BIAO Bank Tanzania Ltd., No. 95 CIV. 4856, 1996 WL 490710, at *2 (S.D.N.Y. Aug. 27, 1996); Fed. R. Civ. P. 26(b)(3) (documents prepared by or for a "party or by or for

that other party's representative").  Although the work-product
doctrine protects the opinions, theories and strategies of an
attorney, the protection extends to facts as well.  <u>See</u> <u>In re</u>
<u>Grand Jury Subpoena Dated Oct. 22, 2001</u>, 282 F.3d 156, 161 (2d
Cir. 2002).

Moreover, "the work-product doctrine is distinct from and
broader than the attorney-client privilege."  <u>In re Grand Jury</u>
<u>Proceedings</u>, 219 F.3d 175, 182 (2d Cir. 2000) (citing <u>Hickman</u>, 329
U.S. at 508 and quoting <u>Nobles</u>, 422 U.S. at 238 & n. 11).  "Unlike
the attorney-client privilege, the work-product privilege is not
necessarily waived by disclosure to any third party; rather, 'the
courts generally find a waiver of the work product privilege only
if the disclosure substantially increases the opportunity for
potential adversaries to obtain the information."  <u>Falise v.</u>
<u>American Tobacco Co.</u>, 193 F.R.D. 73, 80 (E.D.N.Y. 2000) (quoting
<u>In re Pfizer Inc. Sec. Litig.</u>, No. 90 Civ. 1260, 1993 WL 561125,
at *6 (S.D.N.Y. Dec. 23, 1993)); <u>see</u> <u>Tilberg</u>, 2005 WL 3543701, at
*1; <u>Medinol, Ltd. v. Boston Scientific Corp.</u>, 214 F.R.D. 113, 114-
15 (S.D.N.Y. 2002).  The purpose of the work-product doctrine "is
to protect material for an opposing party in litigation, not
necessarily from the rest of the world generally."  <u>United States</u>
<u>v. Am. Tel. & Tel. Co.</u>, 642 F.2d 1285, 1299-1300 (D.C. Cir. 1980).
Even where the attorney-client privilege has been waived,
documents "shown to others" may still be protected as attorney
work-product so long as "there was some good reason to show it."

Adlman, 134 F.3d at 1199-1200 & n.4; see also In re Grand Jury, 219 F.3d at 190; Stewart, 287 F. Supp. 2d at 469 (holding that defendant did not waive work-product protection by forwarding copy of e-mail to daughter that she originally sent to her attorney). Sharing documents with a person who has a common interest with the disclosing party, rather than an adversarial relationship, does not waive attorney work-product. See In re Steinhardt Partners, L.P., 9 F.3d 230, 235-36 (2d Cir. 1993). Since OYDSCS employees are aligned in interest with DOE and the disclosure does not substantially increase the risk that plaintiffs would obtain the documents, there was no waiver of attorney work-product protection.[3]

Plaintiffs are unable to establish that they have substantial need for the documents. This Court previously ordered the production of on-site reviews of Regional Suspension Centers, on-site reviews of Alternative Instruction Sites and on-site reviews of Suspension Hearing Centers, conducted between 2004 and 2005. See ct. doc. 142. Plaintiffs' expert completed inspections of several DOE suspension sites this past school year and several more inspections have been scheduled. Furthermore, plaintiffs' expert will consult with DOE as to how to reform the suspension

---

[3] Plaintiffs point out that defendants' privilege log suggests that the OLS set of completed questionnaires for certain regions shows fewer pages than the OYDSCS set for the same region. See Reply Mem. at 11 n.5. To the extent that the OYDSCS set contains additional documents that were never transmitted to OLS, those documents should be produced, if they have not yet been produced.

sites for the new school year and will be permitted to inspect the newly formed sites in October 2007. Critically, defendants have already produced a compilation of the responses to the questionnaires at issue here. See Morehead Decl., Exhs. A, B. In light of the foregoing, plaintiffs have not demonstrated a compelling need for the production of documents protected by the work-product doctrine.

I reach this conclusion warily, since I recognize that a governmental defendant's efforts in collecting data in order to assess its legal position may sometimes coincide with its obligation to provide information to satisfy discovery requests. In this action, and as is all too often the case in other litigations involving challenges to governmental policies and practices, pertinent information sought by plaintiffs may not be readily available or even collected by a governmental defendant in the course of its normal operations. Sometimes, the line between work-product and discovery obligations may intersect. However, I have no reason to doubt the sworn statements submitted by the defendants as to the original purpose of the questionnaire and assume that the defendants took these measures to insure that "legal considerations will play a role in governmental policymaking" and that all underlying information has been disclosed. See In re County of Erie, 473 F.3d at 422. Nonetheless, should other facts come to light suggesting otherwise, or should the accuracy of the survey results or its

methodology become issues in this case, the plaintiffs may seek reconsideration of this ruling. <u>Cf.</u> <u>Doe</u>, 350 F.3d at 302 (forfeiture of privilege justified where "it would be unfair for a party asserting contentions to an adjudicating authority to then rely on its privilege to deprive its adversary of access to material that might disprove or undermine the party's contentions").

<u>Tracking Suggestions</u>

As to the Tracking Suggestions, defendants have adequately demonstrated that the document is protected by the attorney-client privilege. According to defendants, the document contains legal advice provided by the Corporation Counsel's Office concerning items to consider including in the DOE's data tracking project, which was initiated in response to this lawsuit. <u>See</u> Mulhern Decl. at ¶ 9. As such, the document is a communication between counsel and client created for the purpose of providing legal advice. Although the document was maintained on a shared computer folder accessible to twenty DOE employees, the system permitted access to the folder only to employees working on the Project. <u>See</u> <u>id.</u> at ¶¶ 7-8. Since these recommendations contained legal advice and the employees with access to the document "needed to know" the advice provided by the Corporation Counsel's Office for their work on the Project, the document was kept confidential and there is no waiver of the attorney-client privilege. <u>See</u> <u>Scholtisek</u>, 441 F. Supp. 2d at 464; <u>Verschoth</u>, 2001 WL 286763, at

*2; <u>Bank of New York v. Meridien BIAO Bank Tanzania Ltd.</u>, No. 95 Civ. 4856, 1996 WL 474177, at *2 (S.D.N.Y. Aug. 21, 1996). Unlike the questionnaire and responses, this document not only contains legal advice but was disclosed to DOE employees for the purpose of providing legal advice.

Because the Tracking Suggestions document is protected by the attorney-client privilege, the issue of whether the attorney work-product doctrine also applies need not be reached.

<u>Privilege Log</u>

Plaintiffs also argue that defendants waived their privilege claims by submitting an inadequate privilege log and failing to identify the nature of the privileges claimed. However, as plaintiffs acknowledge, defendants' February 6, 2007 letter stated that they withheld the documents "on the grounds of attorney-client privilege and attorney work product." <u>See</u> Morehead Decl., Exh. B; Mem. in Support at 2 n.3 (ct. doc. 156-2). The defendants' delay in producing the log was discussed at a conference on December 14, 2006 and, after several extensions of defendants' time to produce a log, at a conference on January 30, 2007. <u>See</u> minute entries for conferences held on 12/14/2006 and 1/30/07; electronic orders dated 12/15/2006, 1/11/2007 and 1/19/2007. After defense counsel described the nature and volume of the documents sought to be withheld on privilege grounds, this Court ruled that the defendants need not separately identify every document on the privilege log and authorized the grouping of

similar documents "so long as sufficient information is given to identify the basis for the privilege, the number of documents and the reason the documents are of the same nature." Minute entry for 1/30/07 conference. Both the February 6, 2007 and June 2, 2006 letters described the nature and general subject matter of the documents withheld as well as the circumstances underlying their creation. See Morehead Decl., Exh. B. Defendants satisfied my order, having provided descriptions sufficient to enable plaintiffs to assess the applicability of the privileges claimed. See Fed. R. Civ. P. 26(b)(5); Local Civil Rule 26.2(a). Although it would have been preferable had defendants asserted their privilege claims earlier, defendants did not waive their right to do so. Cf. Stewart, 287 F.Supp.2d at 470 (noting that "the current version of Rule 26.2 makes no reference to waiver").

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel is denied.

**SO ORDERED.**

Dated:      Brooklyn, New York
            September 27, 2007

                              _____/s/_____
                              MARILYN D. GO
                              UNITED STATES MAGISTRATE JUDGE